Good morning, Your Honors. Kathleen Page on behalf of the appellant Rabin Oubichon. Your Honor, this case really stems from did the state court have subject matter jurisdiction to change the verdict of the jury after the appellate court found that there was not sufficient evidence to convict him as charged when the jury was not given the opportunity to determine a verdict of a alleged lesser included offense and did the court's action violate then existing federal law as determined by the Supreme Court which is required for a 2254 petition. Mr. Oubichon contends that the court lost its subject matter jurisdiction as the Supreme Court decided in Burks v. United States in 1978 that when the appellate court determined that there was not sufficient evidence to convict him of criminal threats. Is that what they held? I didn't understand them to hold there was insufficient evidence. I understood it was a jury instruction issue. It's my understanding that there was not, that the jury, that the jury instruction did not, was faulty such that the jury did not find, was not instructed whether or not there was a fear factor, which is a crucial element of the criminal offense. I'm looking at the California Court of Appeal decision. It says in footnote 9 on page 13, defendant did not challenge the legal sufficiency of evidence to support a conviction, criminal threat or attempted criminal threat. They're talking about the correctness of the instruction. They're not passing on sufficiency of evidence. Is that the first appeal or the second appeal? He's had two appeals in this matter, Your Honor. December 9, 2002. That would be the first appeal. Right. Okay. So where did they find the contrary? Well, it's my understanding that when the government decided not to retry the defendant on the criminal threats that they lost their jurisdiction. No, I'm not asking you that. I'm asking you where did they find the evidence was insufficient. Let me see if I can find it, Your Honor. What I have says the sufficiency of the evidence was not at issue here. There's nothing in the second. As far as I can tell, there's nothing in the California Court of Appeals' second opinion that deals at all with sufficiency of the evidence one way or another. That is correct, Your Honor. There's nothing in the second appeal regarding sufficiency of evidence. So in the first appeal, they said it wasn't at issue, and in the second appeal, they assumed that it wasn't at issue because it wasn't mentioned. So where does that take you? Well, it was my understanding in my reading of it, and I may have, that it was a sufficiency that the jury was not fully instructed on all of the issues, and therefore, the evidence was legally insufficient for the finding. Well, those are two different questions. There could be a ton of evidence and a bad jury instruction, or there could be perfect instructions and no evidence. Why, I guess, what case or theory ties those two things together? Well, Mr. Wiebichon submits that on Burke v. United States in 1978, it had to do with whether the evidence was legally sufficient, and therefore, because the instructions did not include lesser included, which is part of the jury instruction insufficiency, the court had no authority to enter a guilty verdict for something that the jury had no, was not instructed to find, and was therefore, because the jury was not instructed to find a lesser included, the court had no authority to enter it. The jury found that your client was guilty of the greater offense. So they found that there was evidence beyond a reasonable doubt of every element of the greater offense, which completely, you know, and the lesser offense is completely subsumed under the greater. So they've already found him guilty of the lesser plus one other thing. What's wrong with that reasoning? Well, part of the problem with that reasoning, Your Honor, is that there is a question of whether or not an attempted criminal threat which carries other elements beyond a criminal threat is actually a lesser included offense. Normally, one would think that an attempt would be a lesser included offense, but in this case, a lesser included offense of attempt has an additional element of a specific intent, that he specifically intended to make a threat. So if a person actually makes a threat, are you saying that they can actually make a threat without intending to make a threat, since intent is also an element of making a threat? Sometimes under California law, Your Honor, that can happen when the actual crime case is an attempted threat. But what case supports you on attempted threat under a California case or statute that supports your theory that an attempted threat is not a lesser included offense? There have been DUI cases where, because driving under the influence is a general intent crime, attempt is a specific intent crime, the fact that they have two different intents can make them separate offenses that are not necessarily lesser included. Is there any case or statute that applies your theory in the context of making a threat? In a California State case, People v. Toledo, 26 Cal 4th, 221 at 229, which was The court has determined that a person who intends to commit a crime but fails has a different punishment because of the fact that an attempt consists of two elements, that there has to be the specific intent to commit the crime and a direct but ineffectual act that's done towards its commission. Now, if he's found guilty of the actual threat, which the jury did find, albeit under erroneous jury instructions, then there wasn't an ineffectual attempt to make the crime. He actually completed it. He was not prevented from doing it. Ms. Paisley, if Judge Grieber is done with that line of questioning, I wanted to switch gears for a second and ask you about the readback problem. Certainly, Your Honor. What's the story on that? Well, although the Supreme Court has not directly spoken on a pinpoint whether a readback is a critical stage, which before Mr. Weaver-Chan's trial, the Supreme Court has given certain guidelines as to when a critical stage occurs. And the basic, most fundamental guideline is it's a critical stage when the person basically needs the guiding hand of counsel to face his adversary. And why exactly does he need to have his lawyer there while the court reporter is reading back the testimony to a jury? This was a critical witness who basically impeached the alleged victim in this case. And what would a lawyer do for him while the court reporter is reading the stuff back? The lawyer can make sure that the readback is accurate. Let me stop you there. Is there any claim the readback wasn't accurate? The California Court of Appeals said there's no reason to think the readback wasn't accurate. The problem is, is that the judge himself doesn't even remember whether the readback was done. He just said, I have a standing order that it happened, so I'm going to presume that it did. So although the Supreme California Court held that there was no evidence that it happened, we really just don't know because the court has no recollection of it occurring. As a practical matter, how would one determine whether or not the readback was accurate, given the fact that it is the court reporter who is reading from her notes? I'm sorry, I couldn't hear all of your questions, Your Honor. How would anyone, judge, the attorneys, the defendant, how would anyone be able to determine the accuracy of a court reporter's readback from her notes when no one else can decipher those notes but her or him? Your Honor, if the attorneys were present and the readback occurred in open court with the jury in the jury box, the attorney can refer to his notes if he has any during trial to make sure that the readback does follow what his recollection of the testimony was. He could make sure that if there were parts that the judge ordered stricken were actually not read back and whether the cross-examination was also included in all of the testimony, and to make sure that the court reporter did not advertently or inadvertently place emphasis on certain parts of the testimony which could influence the jury, which would be why the attorney would need to be there, which is why it's a critical stage. It's just to prevent prejudice and to make sure that the readback is as accurate as everybody remembers that it occurred. And that would be why the attorney would need to know. Moreover, the attorney would also need to know, just know that this event was occurring. In this case, the attorney wasn't even notified that a readback of crucial testimony was even about to happen, to be able to object to anything or discuss what would be read back. And, therefore, Mr. Wiebechaar contends that that was a critical stage. His attorney should have been there. Okay. If there are no other questions from Judge Wright or Judge Graber, would you like to reserve some time for rebuttal? Yes, Your Honor, I would. And except for those issues, if the Court has no other questions, Mr. Wiebechaar submits on all the other arguments and issues presented in his briefs. Thank you, Ms. Page. Thank you. I have no questions, Judge Schill. Okay. For the State, please. Polo Conner for Respondent. First, on the issue of the lesser offense, the jury found every factual element necessary to support the conviction for the lesser offense, the attempted criminal threat. The only contested element was the victim's fear, and when that element is subtracted, the remaining elements support the conviction for the attempted criminal threat. And the U.S. Supreme Court has said that by finding a greater offense, the jury necessarily finds the lesser offense. In Morris v. Matthews, the Court stated that in finding aggravated murder, the jury necessarily found simple murder. With respect to subject matter jurisdiction, where the jury finds all the elements of the lesser offense, then Penal Code Section 1260 is a valid exercise of the legislature's right to allow appellate courts to modify the judgment and direct a judgment for a lesser offense. And with respect to the first State appellate court opinion, there was a number of sections that I believe are relevant. There was a section addressing sufficiency of the evidence, which I think is relevant here. This is the – this, again, is the first State appellate court opinion, which starts at ER page 45, and then the relevant sections, I believe, are at ER page 56 and 57, and I'll just read those. It's the crossover paragraph at the bottom of ER page 56. It says, Defendant urges us to require a new jury to determine whether the factual elements of attempted criminal threat are present. This is unnecessary. This jury found true every factual element necessary to support a conviction of attempted criminal threat. And then there's a footnote that I'll read, footnote 9. Defendant did not challenge the legal sufficiency of the evidence to support a conviction of attempted criminal threat or attempted criminal threat. And then resuming in the text at page 57, when the only element in question, the sustained fear of the victim, is subtracted, the remaining elements support a conviction of attempted criminal threat. The instructional error is relevant only to the degree of the crime. And I think that's – I think that's the relevant passage, and I think that addresses the sufficiency of evidence issue. Then with respect to the readback issue, actually, I did have one further point to make on sufficiency of evidence. It's with respect to the Berks v. United States case, which is 437 U.S. 1. It's cited in an appellant's open brief, and basically it's cited for a very general proposition that reversal for insufficiency of evidence is equivalent to a judgment of acquittal, and such a reversal bars retrial. Now, that's generally true, but in this case, there was sufficient evidence of the lesser-included offense. So therefore, retrial on the lesser-included offense is not barred. Now, moving on to the readback issue, basically what this State appellate court said was that it assumed that there was a readback without notification, and this was error, but the Court found the error harmless beyond reasonable doubt. The jury requested a readback of Officer Delgadillo's testimony. It was the trial court's practice to read back the entire testimony, and the State appellate court said in the absence of any hint that this did not occur, the State appellate court concluded that any error was harmless under any standard. If this is done outside the presence of counsel, outside the presence of the judge, how would anybody ever prove one way or the other whether it was accurate or not? Right. There's, you know, no way to, you know, to prove whether that's accurate based on the record before us. Well, there is the possibility that it would be obvious that, just to take a far-fetched example, that the person doing the readback got bored and skipped over a whole lot of stuff that was otherwise relevant or, you know, acted it out in a way that was inappropriate. I mean, I could imagine that there could be some scenarios where an error could be detected. Right. Well, in this case, there was an error, but the State appellate court found it to be that applies when a State appellate court finds an error harmless. First, the State court's decision has to be contrary to or an unreasonable application of Supreme Court precedent regarding harmless error. And also, the Petitioner has to suffer prejudice under the Brecht standard, substantial injurious effect, which is a hard standard for Petitioner to meet. And also, of course, Petitioner has to show that the State court's determination of the facts was unreasonable under the AEDPA standard. And there's also additional evidence that supports the judgment in this case. There's the testimony of the parole agent. That's independent evidence of guilt. It's independent of Officer Delgadillo's testimony. Officer Delgadillo was the reporting officer who initially interviewed the victim. But the parole agent testified that the victim said that the Petitioner threatened to kill her, so that's independent evidence, evidence that's independent of what the reporting officer said or what the reporting officer testified to. And then also, with regard to the readback issue, La Crosse, a decision of this court, is dispositive. It says the U.S. Supreme Court has never addressed whether readback is a critical stage, and therefore, the defendant's absence at the readback cannot be the basis for Federal habeas relief. And La Crosse's reading applies to whether an attorney's lack of notice of the readback violates the right to counsel. A readback without notice to the attorney has not been condemned by the U.S. Supreme Court, and therefore, the defendant's absence at the readback cannot be the basis for Federal habeas relief under the AEDPA standard. And the Fisher case is distinguishable. In Fisher, there was very little evidence. There was just some nonspecific testimony by the jury foreman. The record did not indicate what the jury had reviewed. In the present case, it's reasonable to conclude that all of Officer Delgadillo's testimony was re-read, because, again, the jury requested a readback of Officer Delgadillo's testimony, and the trial court's practice was to read the entire testimony. And also, it's worth pointing out that Fisher employed a standard of review that has since been disapproved by the U.S. Supreme Court. It applied a clearly erroneous standard, which was disapproved by the U.S. Supreme Court in Andrade. Additionally, to the extent that Fisher states that silent denials are accorded less deference, that view has been disapproved by the U.S. Supreme Court in the recent case of Harrington v. Richter. That's 131 Supreme Court, 770 at 785. That's one of the supplemental authorities that I cited. Additionally, Fisher was reviewing district court fact findings that were adverse to the State, and it was reviewing those findings under a deferential clear-error standard. In the present case, there were no district court findings that were adverse to the State. Moreover, Petitioner's claim is barred by Teague. Petitioner's case became final in 2005. If you look at the legal landscape that existed at that time, it did not compel the conclusion that the Constitution required the rule that Petitioner is seeking. As I've mentioned, the U.S. Supreme Court has never addressed whether readback is a critical stage. So with that, I'm prepared to submit it, unless there are questions from the panel. Roberts. Judge Wright, any questions? No questions, thank you. Thank you very much, Mr. O'Connor. Ms. Page, back to you. Regarding the readback, it is true that the Supreme Court has not made a decision as to what is a critical stage, but the Supreme Court has made decisions that I believe are foundational that would lead a court to believe that, yes, it is a critical stage. And most appropriately is footnote 16 of Rothgerie v. Gillespie County. Although it was decided in 2008, it cites the cases that were decided in 1967, 1973, and 1964, which would fall under the AEDPA rule of then-existing law as determined by the Supreme Court, which the Court defined critical stages in proceedings as whether they are formal or informal, in court or out of court, in trial-like confrontations at which counsel would help the accused with coping with legal problems or meeting his adversary. This was the adversary's witness. It was a crucial witness. It's not just – it is someone who actually, based on his statements, impeaches the alleged victim who later recants and says, no, I wasn't in fear, no, he didn't threaten me, no, I didn't see him throw a bottle at me, no, I didn't see him get a knife, and Officer Gillespie saying, yes, she did, yes, she did, yes, she did. None of that applies to the readback. Counsel and the defendant were present in open court when this witness testified and was cross-examined. So those safeguards were present. The readback is just simply that. It is just simply the reading of the testimony that has been given. Why is this a critical stage? Because, Your Honor – As a matter of fact, the readback didn't have to occur. Why is this a critical stage? Because, Your Honor, when the readback occurred, it has to do with what was the shorthand reporter's recollection and accuracy of what was actually said. What would take precedence, her notes or defense counsel's notes? I believe, Your Honor, that had defense counsel been there, they could have discussed prior to the readback with the judge what was going to be said, how it was going to be said, whether it was going to be in the jury room, whether it was going to be in the courtroom where everybody could re-hear everything and ensure the accuracy of the readback, making sure that stricken  We just really don't know what happened. Let's take out the part about stricken statements. I don't know whether or not that even applies here. But in the event of a disagreement between the attorneys and the court reporter's notes, what would take precedence? What would survive? Well, if the court reporter started to read something back and defense counsel believed that that was inaccurate, the defense counsel would have been there to object to the readback and inform the court that that's not what he believes is accurate. They could have then discussed it and determined whether or not the jury, whether the readback is accurate. Well, in your view, what actually would control that? How would the judge break that tie? The court reporter's notes reflect one thing. The defense counsel's notes reflect something else. Now, what is official? I think it would have to be determined on a case-by-case basis as to what the judge recollects, what defense counsel recollects, what the prosecutor recollects. We normally would believe that the court reporter's notes would prevail, but if there's a question of accuracy, I believe that that's something the court would have to decide based on what the inaccurate statement was and what everybody believes is what happened. I see. All right. Judge Wright, any other questions? I'm done. Thank you. Okay. I guess you're out of time. Submitted, Your Honor. Thank you very much, Ms. Page. Mr. O'Connor, thank you as well. The case just argued is submitted. We'll stand and recess for this case. I understand we have some visitors with us this morning. What Judge Graber or Judge Wright and I are going to do now is we're going to go back to the conference room and scratch our heads and try to resolve our cases for this morning. And while we're doing that, our law clerks are going to visit with you for a few minutes, and we'll come out in about 15, 20 minutes and have the pleasure of talking to you ourselves. So see you then. Judge Wright, we'll get back in touch with you in the conference room. Thank you. Thank you.
judges: Silverman, Graber, Cjj Wright (C. Cal.), Dj